UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN EXPRESS MARKETING & DEVELOPMENT CORP. (a Delaware corporation), AMERICAN EXPRESS COMPANY (a New York corporation) <br><br> Plaintiffs, <br><br> v. <br><br> JAMES HAROLD SPURLIN (an individual), <br><br> Defendant. | ) ) ) ) ) ) ) Civil Action No. : 07-7317 (NRB) ) ) ) ) ) ) ) ) ) ) ) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**

---

GREENBERG TRAURIG, LLP
Louis Smith (LS 8851)
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)
Attorneys for Plaintiffs
American Express Marketing & Development Corp.
and American Express Company

TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| STATEMENT OF FACTS | | 2 |
| A. | AMERICAN EXPRESS, ITS BUSINESS AND ITS MARKS | 2 |
| B. | DEFENDANT SPURLIN, AND HIS INFRINGING ACTIONS | 4 |
| C. | AMERICAN EXPRESS'S REPEATED EFFORTS TO ADDRESS THIS MATTER AND SPURLIN'S DISREGARD OF THOSE EFFORTS | 6 |
| ARGUMENT: | THE COURT SHOULD ENTER A DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT PRECLUDING FURTHER USE OF AMERICAN XPRESS MORTGAGE | 8 |
| | A. The Allegations in the Complaint Establish Liability Against Defendant for the Claims Asserted in the Complaint | 8 |
| |     1. Liability is Established for the Lanham Act Claims | 9 |
| |     2. Liability is Established for the State Law Claims | 12 |
| | B. The Court Should Enter a Permanent Injunction to Shut Down Defendant's On-Going Trademark Infringement and Dilution | 13 |
| CONCLUSION | | 15 |

TABLE OF AUTHORITIES

Page

**Cases**

*American Express Company v. American Express Limousine Service, Ltd.*,
  772 F. Supp. 729 (E.D.N.Y. 1991) ...................................................................................13

*Dan-Foam A/S v. Brand Name Beds, LLC*,
  500 F. Supp. 2d 296 (S.D.N.Y. 2007) ..............................................................................11

*Entral Group Int'l, LLC v. Sun Sports Bar, Inc.*,
  2007 WL 2891419 (E.D.N.Y. Sept. 28, 2007) .................................................................13

*GMA Accessories, Inc. v. BOP, LLC*,
  507 F. Supp. 2d 361 (S.D.N.Y. 2007) ..............................................................................13

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*,
  973 F.2d 155 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993) .....................................9

*GTFM, Inc. v. Solid Clothing Inc.*,
  215 F. Supp. 2d 273 (S.D.N.Y. 2002) ................................................................................9

*Hard Rock Café International (USA), Inc. v. Morton*,
  1999 WL 701388 (S.D.N.Y. Sept. 9, 1999)................................................................13, 14

*Interscope Records v. Sharp*,
  2007 WL 4555905 (N.D.N.Y. Dec. 19, 2007)........................................................9, 13, 14

*Labarera v. Andrew's Trucking Corp.*,
  2007 WL 4224631, (E.D.N.Y. Nov. 26, 2007)...................................................................8

*New Sensor Corp. v. CE Distribution LLC*,
  303 F. Supp. 2d 304 (E.D.N.Y. 2004), aff'd, 121 Fed. Appx. 407 (2d Cir. 2004) ...........12

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
  477 F.3d 765 (2d Cir. 2007) .............................................................................................13

*Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*,
  241 F.R.D. 451 (S.D.N.Y. 2007) .......................................................................................8

*Unilever Supply Chain, Inc. v. Steenmeyer*,
  2007 WL 4050542, (S.D.N.Y. Nov. 4, 2007)...................................................................15

*United States v. Pugh*,
  2007 WL 3539435 (E.D.N.Y. Nov. 14, 2007)..................................................................13

*United States v. W.T. Grant Co.*,
  345 U.S. 629 (1953).........................................................................................................14

**Statutes**

15 U.S.C. § 1065 .................................................................................................................. 4

15 U.S.C. § 1114 ........................................................................................................... 7, 9, 11

15 U.S.C. § 1115(b) ............................................................................................................ 4, 5

15 U.S.C. § 1116 ........................................................................................................... 13, 15

15 U.S.C. § 1125(a) ..................................................................................................... 7, 10, 11

15 U.S.C. § 1125(c) ............................................................................................................ 7, 11

15 U.S.C. § 1125(c)(1) ........................................................................................................... 13

15 U.S.C. §§ 1057(b) ............................................................................................................. 4

New York General Business Law § 133 ............................................................................. 7, 12

New York General Business Law § 349 ................................................................................. 7

New York General Business Law § 360 ............................................................................. 7, 12

**PRELIMINARY STATEMENT**

Plaintiffs American Express Marketing & Development Corporation and American Express Company (collectively "American Express"), respectfully submit this Memorandum of Law in Support of their Motion for Default Judgment under Rule 55(b)(2). American Express uses its famous AMERICAN EXPRESS family of marks in connection with financial services. Defendant James Harold Spurlin ("Spurlin") has infringed those marks through his use of AMERICAN XPRESS MORTGAGE in connection with the highly related area of mortgage brokerage services. Despite the filing of this lawsuit, that blatant infringing activity continues to this day.

Default has already been entered against Spurlin by the Clerk pursuant to Rule 55(a) as he never responded to American Express's Complaint. As a result, all of the allegations in the Complaint relating to liability must be taken as true. Those allegations establish liability on the part of Spurlin for the trademark infringement and the other claims asserted in the Complaint. While those claims entitle American Express to money damages, this motion is limited to seeking a permanent injunction shutting down the on-going infringing activity of Spurlin. This is the critical relief that American Express seeks from this Court, and thus has limited this motion accordingly.

## **STATEMENT OF FACTS**

A. **AMERICAN EXPRESS, ITS BUSINESS AND ITS MARKS**

American Express is one of the largest financial and travel service companies in the United States with over 78 million holders of its credit cards and over $27 billion in annual revenue from its the varied services. It is a very well-known corporation with a significant local presence in the State of New York, having its principal place of business located in New York City. Complaint at ¶¶7-8.

American Express began using its famous AMERICAN EXPRESS trade name and mark in at least as early as 1850. Since that time, American Express has also adopted and uses a family of numerous marks that incorporate the AMERICAN EXPRESS mark, or variations thereof, along with other letters or terms, in connection with its extensive financial and travel services, and services related thereto. Representative samples of such marks include but are not limited to the following: BLUE FROM AMERICAN EXPRESS, ONE FROM AMERICAN EXPRESS, CLEAR FROM AMERICAN EXPRESS, OPEN FROM AMERICAN EXPRESS, AMERICAN EXPRESS BANK, AMERICAN EXPRESS BILL PAY, AMERICAN EXPRESS COMPANY. Complaint at ¶9.

American Express offers a variety of financial and related services in connection with its famous AMERICAN EXPRESS family of marks, including but not limited to gift card, charge card, credit card, smart card and stored value card services, banking, and insurance. American Express' famous AMERICAN EXPRESS mark is prominently affixed to all of American Express' AMERICAN EXPRESS branded credit cards, is prominently affixed to most documents relating to American Express' AMERICAN EXPRESS financial and travel services, and is otherwise used in the sale and advertising of its services. Complaint at ¶¶10-11.

American Express advertises, promotes and sells its services offered in connection with the famous AMERICAN EXPRESS family of marks via its website at www.americanexpress.com which receives over 17 million unique visits per month. American Express has and continues to extensively promote, advertise, and use the famous AMERICAN EXPRESS family of marks in a variety of media throughout the United States and has continuously used the marks to distinguish its services from those offered by others. American Express extensively advertises and promotes its AMERICAN EXPRESS family of marks, including in television, radio and print advertisements, emails, e-newsletters, statement inserts, and on brochures available at merchant sites. American Express' AMERICAN EXPRESS branded services are also routinely featured in articles and reviews in print and online publications. Complaint at ¶¶12-13.

American Express has invested extensively in creating, promoting, and maintaining the goodwill associated with its famous AMERICAN EXPRESS family of marks. American Express has spent considerable time and money in advertising and promoting its services offered in connection with its AMERICAN EXPRESS family of marks. In 2006, American Express spent in excess of $6.5 billion in marketing, promotion, rewards, and card member services worldwide. Complaint at ¶14.

As a result of American Express' substantial advertising and promotional efforts for the services offered in connection with its AMERICAN EXPRESS family of marks, as well as its dedication to providing quality services, American Express has secured the recognition, high regard, and goodwill of the general public and customers. The AMERICAN EXPRESS mark has been adjudicated a famous mark in court decisions, including, *American Express Company v. Lyons, d/b/a American Express et. al.*, 193 USPQ 96 (E.D. CA 1976) and *American Express Co.*

*v. South American Express Inc.*, 207 USPQ 893 (C.D. CA 1980), and functions to signify services originating exclusively from American Express. This success is evidenced by the tremendous revenues realized by American Express in connection with the sale of its AMERICAN EXPRESS brand services, in excess of $27 billion in 2006 alone. Complaint at ¶15. To protect its famous AMERICAN EXPRESS family of marks, American Express has sought and obtained federal registrations for its marks. By virtue of these registrations, under the Lanham Act, 15 U.S.C. §§ 1057(b) and 1115, American Express has the exclusive right to use of these registered marks. Lanham Act, 15 U.S.C. §1115(b). Complaint at ¶16 (containing chart describing certain American Express marks).

Furthermore, many of these registrations have become incontestable under the Lanham Act, 15 U.S.C. § 1065, and thus serve as conclusive evidence of the validity of the mark, American Express' ownership of the mark, and American Express' exclusive right to use the registered mark. Lanham Act, 15 U.S.C. § 1115(b). Complaint at ¶17.

**B.     DEFENDANT SPURLIN, AND HIS INFRINGING ACTIONS**

Long after American Express began advertising and selling its services under the famous AMERICAN EXPRESS family of marks, Defendant, without authorization from American Express, adopted and began utilizing "AMERICAN XPRESS MORTGAGE" which is virtually identical and confusingly similar to American Express' well-known AMERICAN EXPRESS family of marks, and which incorporates the phonetic equivalent and conveys the same commercial impression as American Express' famous AMERICAN EXPRESS mark, in U.S. commerce in connection with financial services, namely mortgage brokerage services. Complaint at ¶18.

Defendant sells and/or promotes his AMERICAN XPRESS MORTGAGE services via the Internet, as does American Express, and has at least four people offering mortgage brokerage services under the AMERICAN XPRESS MORTGAGE mark. Complaint at ¶¶19-20.

Defendant owns the website, www.mortgagexpress.net, where Defendant prominently displays his use of AMERICAN XPRESS MORTGAGE throughout the website to promote, advertise, and provide information for his AMERICAN XPRESS MORTGAGE mortgage services. Defendant also provides consumers with Defendant's contact and ordering information, as well as an online form with which consumers can submit applications and pre-qualify for Defendant's services. Complaint at ¶¶20-21. Defendant continues to use AMERICAN XPRESS MORTGAGE in connection with his website www.mortgagexpress.net. See Declaration of Marc Groves in Support of Motion for Default Judgment and Permanent Injunction ("Groves Dec.") at ¶¶4-5, Exc. C and D. Moreover, various directories continue to list American Xpress Mortgage. See id. at ¶¶6-13, Exs. E through L.

Defendant's mortgage brokerage services are highly related to and/or complementary services to those advertised, promoted and sold by American Express in connection with its famous AMERICAN EXPRESS family of marks. Complaint at ¶30.

Defendant's services are intended to be, and are in fact, targeted towards a substantial segment of the public that has long been familiar with American Express' services and the famous AMERICAN EXPRESS family of marks. Complaint at ¶31.

Defendant is the owner of, and exerts personal control over, the business decisions of American Xpress Mortgage. Defendant personally directs, controls, ratifies, sanctions, and/or personally participates in selecting and/or approving the trademarks used by American Xpress Mortgage. In particular, Defendant, acting as owner and primary decision maker, specifically

5

personally directed, controlled, ratified, sanctioned, and/or personally participated in (1) the selection and/or approval of AMERICAN XPRESS MORTGAGE; (2) the selection and/or approval of the marketing materials and website marketing of AMERICAN XPRESS MORTGAGE and Defendant's products sold in connection with AMERICAN XPRESS MORTGAGE; and (3) the selection and/or approval of the use of the domain name www.americanxpressmortgage.com. Complaint at ¶32.

C.   **AMERICAN EXPRESS'S REPEATED EFFORTS TO ADDRESS THIS MATTER AND SPURLIN'S DISREGARD OF THOSE EFFORTS**

In or around April of 2007, American Express learned of the existence of a website americanxpressmortgage.com which incorporates an almost identical mark to that of the famous AMERICAN EXPRESS mark, where Defendant advertised and offered his AMERICAN XPRESS MORTGAGE mortgage brokerage services.  On or around May 2, 2007, American Express' learned that Defendant is using AMERICAN XPRESS MORTGAGE in U.S. commerce in connection with the advertising, promotion, and sale of mortgage brokerage services.  Complaint at ¶¶24-25.

On or around May 2, 2007, American Express' outside counsel sent a cease and desist letter to Defendant expressing American Express' concerns with the Defendant's use of a mark nearly identical to the famous AMERICAN EXPRESS mark in a domain name and use of AMERICAN XPRESS MORTGAGE in connection with the offering of financial services. American Express requested that the domain name be transferred to American Express and that Defendant cease and desist all current and future use of the domain name, or anything else confusingly similar.  American Express also requested that Defendant change his company name from AMERICAN XPRESS MORTGAGE, so as not to resemble American Express' famous AMERICAN EXPRESS mark.  Complaint at ¶26.

In response, on or around May 4, 2007, Defendant cancelled the domain name registration for americanxpressmortgage.com. Complaint at ¶27.

On or around June 5, 2007, American Express' outside counsel sent a letter to counsel for Defendant reiterating its concerns about use of AMERICAN XPRESS MORTGAGE as a company name and an offer to allow American Xpress Mortgage to phase out its use of AMERICAN XPRESS MORTGAGE over a three-month period. Complaint at ¶28.

On or about July 9, 2007, American Express' outside counsel sent a facsimile to Defendant's counsel requesting immediate written assurances that Defendant would comply with American Express' requested actions to resolve the matter. The facsimile did not receive a response. Complaint at ¶29.

On August 16, 2007, American Express filed its Complaint against Defendant in this matter. Docket Entry 1. The Complaint asserts claims under the Lanham Act for trademark infringement (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), and dilution (15 U.S.C. § 1125(c)), and under New York state law for deceptive acts and practices (New York General Business Law § 349), trademark infringement (New York General Business Law § 360-k), injury to business reputation and dilution (New York General Business Law § 360-l), and use of name with intent to deceive (New York General Business Law § 133). On September 25, 2007, Defendant executed a Waiver of Service of Summons. Docket Entry 3. Nevertheless, Defendant never responded to the Complaint. As a result, American Express requested entry of default. Docket Entry 4. That request was served on counsel for Defendant. Docket Entry 5. On December 21, 2007, the Clerk entered default against Defendant pursuant to Rule 55(a). Docket Entry 4, Exhibit 2.

Despite all the above efforts, including this litigation, Defendant continues to use AMERICAN XPRESS MORTGAGE in blatant disregard for the rights of American Express. *See* Groves Dec.

## ARGUMENT

**THE COURT SHOULD ENTER A DEFAULT JUDGMENT AND PERMANENT INJUNCTION AGAINST DEFENDANT PRECLUDING FURTHER USE OF AMERICAN XPRESS MORTGAGE**

Rule 55 sets forth a two-step process where a party is in default. First, pursuant to Rule 55(a), a plaintiff may request that the Clerk enter default where a defendant fails to plead or otherwise defend. Second, after the entry of default, the plaintiff may then obtain a judgment by default pursuant to Rule 55(b). *See Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 453 (S.D.N.Y. 2007).

Here, the first step has been satisfied. The Clerk as entered a certificate of default, which states that the "default of defendant James Harold Spurlin is hereby noted pursuant to Rule 55(a) of the Federal Rules of Civil Procedure." *See* Docket Entry 4, Attachment #2. Through this motion, American Express now seeks entry of a default judgment pursuant to Rule 55(b)(2). Because American Express seeks a permanent injunction, the Court, and not the Clerk, must address this motion. *See Ashraf*, 241 F.R.D. at 453.

### A. The Allegations in the Complaint Establish Liability Against Defendant for the Claims Asserted in the Complaint

"Defendant's default amounts to an admission of liability and all of the well-pleaded allegations in plaintiff's complaint pertaining to liability are deemed true." *Labarera v. Andrew's Trucking Corp.*, 2007 WL 4224631, *2 (E.D.N.Y. Nov. 26, 2007) (concluding that allegations in complaint establish elements of liability under ERISA); *Interscope Records v.*

8

*Sharp*, 2007 WL 4555905, *1 (N.D.N.Y. Dec. 19, 2007) (reasoning that "a finding of liability can be predicated solely on a facially valid complaint" and concluding that complaint established liability for copyright infringement); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("a party's default is deemed to constitute a concession of all well-pleaded allegations of liability"), *cert. denied*, 506 U.S. 1080 (1993).

### 1. Liability is Established for the Lanham Act Claims

"To establish a trademark infringement claim under either Section 32 or 43(a) of the [Lanham] Act, 15 U.S.C. §§ 1114(1), 1125(a), a plaintiff must show that (1) it has a valid mark entitled to protection and (2) the defendant's use of the mark is likely to cause confusion." *GTFM, Inc. v. Solid Clothing Inc.*, 215 F. Supp. 2d 273, 293 (S.D.N.Y. 2002) (citing *Time, Inc. v. Petersen Publ'g Co., L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999)). The allegations in the complaint plainly establish those elements.

American Express set forth at length that it has valid marks that are entitled to protection. *See* Complaint at ¶¶7-17. Additionally, American Express alleged that Defendant's unauthorized use of AMERICAN XPRESS MORTGAGE is likely to cause confusion, to cause mistake, or to deceive consumers into believing that Defendant's services are American Express' services, and/or that Defendant's services are in some way sponsored by or connected or affiliated with American Express or the services of American Express within the meaning of 15 U.S.C. § 1114. Complaint at ¶36. *See also* Complaint at ¶42 ("Defendant's unauthorized use of AMERICAN XPRESS MORTGAGE so resembles American Express' famous AMERICAN EXPRESS family of marks used in connection with nearly identical services as to be likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant and his company with American Express, and as to origin, sponsorship or approval of

9

Defendant's services, and other commercial activity within the meaning of 15 U.S.C. § 1125(a).")

More specifically, American Express alleged that Defendant's unauthorized use of AMERICAN XPRESS MORTGAGE in connection with mortgage brokerage services is confusingly similar to American Express' famous AMERICAN EXPRESS family of marks used in connection with financial and travel-related goods and services. AMERICAN XPRESS MORTGAGE incorporates the phonetic equivalent, nearly identical spelling and same commercial impression as American Express' famous AMERICAN EXPRESS family of marks. Complaint at ¶34.

AMERICAN XPRESS MORTGAGE is used in connection with services highly related and complementary to those offered in connection with American Express' famous AMERICAN EXPRESS family of marks as Defendant's mortgage brokerage services are essentially assistance in obtaining loans or lines of credit. Additionally, Defendant registered the domain name, www.mortgagexpress.net, and is using this website to advertise and provide application processing for Defendant's AMERICAN XPRESS MORTGAGE mortgage brokerage services throughout the United States. The addition of the term "Mortgage" in Defendant's use of AMERICAN XPRESS MORTGAGE does nothing to alleviate this likelihood for confusion, as American Express has adopted and uses several marks consisting of the AMERICAN EXPRESS mark and other letters or words. Further, American Express is associated in the minds of consumers for its financial services akin to mortgage services. Thus, consumers will reasonably assume that Defendant's use of AMERICAN XPRESS MORTGAGE, which incorporates the term "AMERICAN EXPRESS" or its phonetic equivalent, and which are used in connection with financial or financially-related services, originate from American Express. Furthermore,

American Express' and Defendant's services are aimed at many of the same consumers and are offered in the same channels of trade, including the Internet. Complaint at ¶35.

Under the federal dilution statute, "'the owner of a famous mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.'" *Dan-Foam A/S v. Brand Name Beds, LLC*, 500 F. Supp. 2d 296, 307 (S.D.N.Y. 2007) (quoting 15 U.S.C. § 1125(c)(1)).

American Express alleged that due to over a century and a half of continuous use and extensive advertising, promotion and widespread acceptance by the trade, American Express' AMERICAN EXPRESS mark has become famous within the meaning of the Lanham Act, 15 U.S.C. § 1125(c), and is highly regarded and respected by the general public and customers. Defendant's unauthorized use of AMERICAN XPRESS MORTGAGE began after American Express' AMERICAN EXPRESS mark became famous. Defendant's unauthorized use of AMERICAN XPRESS MORTGAGE in commerce in connection with mortgage brokerage services causes a likelihood of dilution by tarnishment and blurring of the distinctive quality of American Express' AMERICAN EXPRESS mark in violation of 15 U.S.C. § 1125(c). Complaint at ¶¶45-47.

Accordingly, the allegations in the Complaint establish liability under the Lanham Act for trademark infringement (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a), and dilution (15 U.S.C. 1125(c)).

### 2. Liability is Established for the State Law Claims

With regard to trademark infringement under New York General Business Law § 360-k, "[a]s with the Lanham Act, a plaintiff suing for trademark infringement under state law must prove the defendant's use of the mark 'is likely to cause confusion, mistake or to deceive.'" *New Sensor Corp. v. CE Distribution LLC*, 303 F. Supp. 2d 304, 317 (E.D.N.Y. 2004) (quoting *Allied Maint. Corp. v. Allied Mech. Trades, Inc.*, 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628 (1977)), *aff'd*, 121 Fed. Appx. 407 (2d Cir. 2004). Thus, the allegations addressing trademark infringement under the Lanham Act establish liability under this state-law claim as well. *See also* Complaint at ¶¶53-54.

To establish a action for injury to business reputation and dilution under York General Business Law § 360-l, a plaintiff must demonstrate: "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *New Sensor*, 303 F. Supp. 2d at 317 (quoting *U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001)). Again, the allegations addressing dilution under the Lanham Act establish liability under this state-law claim as well. *See also* Complaint at ¶¶57-58.

For a claim under New York General Business Law § 133, a plaintiff must "show that Defendants used its name or symbol as part of Defendants' 'corporate, assumed or trade name' for purposes of advertising with an intent to deceive." *U-Neek*, 147 F. Supp. 2d at 176 (quoting *Oliveira v. Frito-Lay, Inc.*, 1997 WL 324042 (S.D.N.Y. June 13, 1997)). The allegations in the Complaint satisfy this claim as well. *See* Complaint at ¶¶61-62.

### B. The Court Should Enter a Permanent Injunction to Shut Down Defendant's On-Going Trademark Infringement and Dilution

"'A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" *Interscope Records*, 2007 WL 4555905, *3 (quoting *Entral Group Int'l, LLC v. Sun Sports Bar, Inc.*, 2007 WL 2891419, *7 (E.D.N.Y. Sept. 28, 2007)); *see also GMA Accessories, Inc. v. BOP, LLC*, 507 F. Supp. 2d 361, 364-65 (S.D.N.Y. 2007) (granting motion for default and entering permanent injunction in trademark-infringement case); *United States v. Pugh*, 2007 WL 3539435 (E.D.N.Y. Nov. 14, 2007) (granting motion for default judgment for permanent injunction). That standard is fully satisfied here.

The Second Circuit has found that 15 U.S.C. § 1125(c)(1) "entitles the owner of a famous, distinctive mark to an injunction against the user of a mark that is 'likely to cause dilution' of the famous mark.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 477 F.3d 765, 766 (2d Cir. 2007) (quoting 15 U.S.C. § 1125(c)(1)). The establishment of liability for dilution in this case entitles American Express to an injunction.

Moreover, upon a finding of trademark infringement, a district court has the power "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. While an injunction is not automatically compelled based on a finding of infringement, injunctive relief is typically appropriate because, "'[i]n a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in an of itself, irreparable injury.'" *American Express Company v. American Express Limousine Service, Ltd.*, 772 F. Supp. 729, 736 (E.D.N.Y. 1991) (quoting *In re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979)); *see also Hard Rock Café International (USA), Inc. v. Morton*, 1999 WL 701388, *4

(S.D.N.Y. Sept. 9, 1999) (reasoning that "finding of likelihood of confusion will normally lead to a finding of irreparable harm").

Injunctive relief is particularly appropriate where "'there exists some cognizable danger of recurrent violation.'" *Id.* (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). *See, e.g., Interscope Records*, 2007 WL 4555905, *4 (granting default judgment and permanent injunction based on copyright infringement where infringement would likely continue absent injunction).

In this case, the equities overwhelmingly favor American Express. The infringement is blatant and American Express has established liability for numerous claims under the Lanham Act and New York law. American Express has no adequate remedy at law. Indeed, American Express is not even seeking any type of money damages resulting from Defendant's improper actions. The critical relief American Express requires is the preclusion of Defendant from further infringing on its rights moving forward. An injunction is in the public interest as otherwise consumers will believe that AMERICAN XPRESS MORTGAGE, which provides financial services like American Express, originates from American Express.

American Express made repeated efforts to try to resolve this matter prior to filing suit. Defendant failed to respond. It made further repeated efforts after suit was filed. Defendant failed to respond. Beyond that, despite executing a Waiver of Service of Summons, Defendant never appeared in the case. Defendant has thus shown disregard for both American Express and this Court. All the while, and up to the present, Defendant continues to engage in the improper and unlawful conduct that has forced American Express to seek relief from this Court. *See* Groves Dec. Absent an injunction from this Court, that improper and infringing activity on the

part of the Defendant will not stop and American Express will be unable to protect its extremely valuable trademarks and brand.

Finally, the Court should require Defendant to file and serve a sworn, written report in accordance with 15 U.S.C. § 1116 setting forth the manner and form in which Defendant has complied with the injunction. *See Unilever Supply Chain, Inc. v. Steenmeyer*, 2007 WL 4050542, *1 n.3 (S.D.N.Y. Nov. 4, 2007) (requiring such report).

## CONCLUSION

WHEREFORE, American Express respectfully requests that the Court grant its motion in its entirety, enter a Default Judgment and Permanent Injunction against Defendant in the proposed form submitted with this motion, and grant American Express any further relief that the Court deems appropriate.

Respectfully submitted,

Louis Smith (LS 8851)
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

Attorneys for Plaintiffs American Express Marketing & Development Corp. and American Express Company

Dated: March 14, 2008
       New York, New York

15